UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DOROTHY WHITE,

                        Plaintiff,

                -against-

TOWN OF SOUTHAMPTON, SOUTHAMPTON
TOWN POLICE DEPARTMENT, LIEUTENANT
JOHN JAMES, in his individual and official
capacities, SERGEANT MATTHEW
HELMSTEAD, in his individual AND OFFICIAL
capacities, AND OFFICER JOHN DOE, in his
individual and official capacities.

                        Defendants.
------------------------------------------------------------X

**Docket No.: CV- 06-0140**
**(ADS)(ARL)**

***REVISED* SECOND
AMENDED COMPLAINT**

**_Jury Trial is Demanded_**

PLAINTIFF, DOROTHY WHITE, by and through her attorneys, The Law Offices of
Frederick K. Brewington, by stipulation with Defendants and with permission from the Court
pursuant to FRCP 15, submit this Second Amended Complaint and state and/or allege as follows:

**PRELIMINARY STATEMENT**

1.      This is a civil action seeking monetary relief, a declaratory judgment, compensatory
and punitive damages, disbursements, costs and fees for violations of the Plaintiff's rights, brought
pursuant to 42 U.S.C. §§ 1983, 1985, 1986; assault; battery; negligence; and other state-law causes
of action(s).

2.      Specifically, the Plaintiff alleges that the Defendants (collectively and individually)
negligently, wantonly, recklessly, intentionally and knowingly sought to and did wrongfully deprive
her of her Constitutional rights, pursuant to the above mentioned statute and causes of action by
committing acts under color of law and depriving the Plaintiff of rights secured by the Constitution
and laws of the State of New York.

3.      Plaintiff alleges that Defendants (collectively and individually), their agents,
employees and servants unlawfully searched, seized, harassed, abused, assaulted and battered

Plaintiff without authority or justification.

     4.     Plaintiff alleges that the Defendants (collectively and individually) were negligent in their failure conduct a proper investigation and/or follow proper procedures in violation of the plaintiff's constitutional and civil rights.

     5.     Plaintiff further allege that Defendants (collectively and individually) were negligent in training, hiring and supervising its Police Officers. Additionally, Defendants are liable to the Plaintiffs for encouraging such civil rights violations and in failing to properly investigate and punish the actions of the Defendant police officers, among other things.

     6.     As a result of Defendants' actions (or lack thereof), Plaintiffs incurred significant cost and expenses, including but not limited to: physical and psychological injuries, legal fees/costs, medical bills/costs, and other expenses.

     7.     On or about April 11, 2005, Plaintiff served and/or filed a Notice of Claim on Municipal Defendants TOWN OF SOUTHAMPTON and SOUTHAMPTON TOWN POLICE DEPARTMENT in accordance with New York State's *General Municipal Law* § 50-e.

     8.     Thereafter, on July 11, 2005 Municipal Defendants conducted a hearing and/or examination of DOROTHY WHITE at the law firm of Sledjeski and Tierney, PLLC, pursuant to New York State's *General Municipal Law* § 50-h.

     9.     Accordingly, Plaintiff has satisfied the necessary jurisdictional prerequisites before filing the instant Complaint.

<u>**JURISDICTION AND VENUE**</u>

     10.     The jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1343.

     11.     This Court is requested to exercise supplemental jurisdiction with respect to Plaintiff's State Law claims pursuant to 28 U.S.C. § 1367.

     12.     Venue in the Eastern District of New York is proper under 28 U.S.C. § 1391, based on the fact that Plaintiff resides in Suffolk County. Furthermore, the place where the events and violations herein alleged occurred was in the Town of Southampton, Suffolk County.

## PARTIES

13.     Plaintiff DOROTHY WHITE (hereinafter "MS. WHITE") is a seventy (70) year-old African American female. Ms. White is a resident of the Town of Southampton, located in the County of Suffolk.

14.     Upon information and belief, Defendant TOWN OF SOUTHAMPTON (hereinafter "TOWN") is a duly constituted municipal corporation of the State of New York. Upon information and belief, the TOWN formed and has direct authority over several different departments including the SOUTHAMPTON TOWN POLICE DEPARTMENT. The aforementioned department and/or the employees, agents or representatives of said department is directly involved in violations that are the at issue in this Complaint.

15.     Upon information and belief, the SOUTHAMPTON TOWN POLICE DEPARTMENT (hereinafter "POLICE DEPARTMENT") was and is an agency of the TOWN OF SOUTHAMPTON.

16.     Upon information and belief, SERGEANT MATTHEW HELMSTEAD, AND OFFICER JOHN DOE are officers employed by the TOWN OF SOUTHAMPTON under the direction of the SOUTHAMPTON TOWN POLICE DEPARTMENT and was acting in furtherance of their scope of his employment, acting under color of statutes, ordinances, regulations, policies, customs, and usages of the State of New York, and/or the TOWN OF SOUTHAMPTON and acting in their individual and official capacities. Upon information and belief, DEFENDANT HELMSTEAD was a Patrol Sergeant and JOHN DOE was a patrol officer at all times relevant to this Complaint.

17.     Upon information and belief, LIEUTENANT JOHN JAMES (hereinafter "LT. JAMES") was a lieutenant with the SOUTHAMPTON TOWN POLICE DEPARTMENT, who allegedly investigated the incident complained of herein.

## FACTUAL ALLEGATIONS

18.     On the morning of Sunday, January 16, 2005 at approximately 10:00a.m., Ms.

White was in her home with several family members, friends, and other visitors when two (2) employees, agents, representatives, members and/or officers, who identified themselves as being officers with the SOUTHAMPTON TOWN POLICE DEPARTMENT approached to MS. WHITE'S home.

19.     Among these two officers was Defendant DEFENDANT HELMSTEAD.

20.     The SOUTHAMPTON TOWN POLICE DEPARTMENT officers (including DEFENDANT HELMSTEAD AND JOHN DOE) alleged that they were at Ms. White's home pursuant to a warrant that had allegedly been issued for her son. The officers did not display the alleged arrest warrant that the officers claimed they had.

21.     Upon knocking on Ms. White's door, the officers advised Ms. White that they were looking for her son. Although the officers claimed that they had an arrest warrant for MS. WHITE'S son, the officers never showed the alleged warrant to MS. WHITE.

22.     When MS. WHITE asked the officers about the specifics of the arrest warrant, the officers advised MS. WHITE that the arrest warrant was issued because her son "failed to answer his mail." The officers provided MS. WHITE with no additional information.

23.     MS. WHITE truthfully and politely advised the officers that her son was not there at that time.

24.     The officers did not believe MS. WHITE'S representation that her son was not at the premises. The officers then asked MS. WHITE if they could enter her home to verify that her son was, in fact, not home.

25.     MS. WHITE asked the officers if they had a search warrant to enter the premises. The officers answered "yes."

26.     MS. WHITE then advised the officers that she would let them into her home to search for her son if the officers displayed the search warrant, which the officers claimed they had at the time.

27.     The officers refused to display the alleged search warrant and/or arrest warrant.

4

Instead, the officers began to insist that MS. WHITE grant them access to the home so that the officers could search for her son.

28. Again, MS. WHITE advised the officers that she would not let them into her home to search the home until the officers displayed the alleged warrant(s) and allow her to examine same. The officers still refused to show any warrants.

29. Instead, the officers began to pressure Ms. White and attempted to coerce MS. WHITE into letting them inside her home to search for her son.

30. At the time, Ms. White had guests and other family members inside her home. As Ms. White turned her attention away from the officers at the door to make a comment to her guests/family, DEFENDANT HELMSTEAD 1 managed to slip pass Ms. White, who's attention was directed away from the officer at the door, and forced his way into her home. JOHN DOE followed DEFENDANT HELMSTEAD into Ms. White's home and remained next to and/or near DEFENDANT HELMSTEAD at all times while inside the home.

31. DEFENDANT HELMSTEAD entered MS. WHITE'S home without displaying the alleged search and/or arrest warrants.

32. DEFENDANT HELMSTEAD knowingly and intentionally entered MS. WHITE'S home without displaying the alleged search and/or arrest warrants, despite MS. WHITE'S clear and unequivocal request to see the alleged warrant(s).

33. DEFENDANT HELMSTEAD knowingly and intentionally entered and trespassed into WHITE'S home without justification, in fact or in law, and without MS. WHITE'S consent.

34. DEFENDANT HELMSTEAD then proceeded to walk through Ms. White's home in search of her son.

35. At all times, DEFENDANT HELMSTEAD was aware that MS. WHITE did not consent to or approve of his entrance and search of her home. Yet the officer proceeded to enter and search Ms. White's home despite his knowledge that MS. WHITE dissented.

36.     When MS. WHITE turned towards the door to continue her conversation with
DEFENDANT HELMSTEAD, she noticed that the officer was already in her home and was
walking quickly towards the bedroom area.

37.     MS. WHITE then turned around and followed  DEFENDANT HELMSTEAD as
he forayed through her home.

38.     As MS. WHITE followed  DEFENDANT HELMSTEAD , Ms. White constantly
raised her objections to the officer's entrance and search of her home without displaying the
warrant(s) that he claimed he possessed.

39.     In addition, Ms. White continually demanded  DEFENDANT HELMSTEAD to
display the alleged warrant(s).

40.     Despite MS. WHITE'S continuing objections,  DEFENDANT HELMSTEAD
ignored Ms. White's requests. In fact,  DEFENDANT HELMSTEAD refused to speak to MS.
WHITE as he walked through and searched her home. Instead,  DEFENDANT HELMSTEAD
continued his unwarranted and unbridled search/intrusion.

41.      DEFENDANT HELMSTEAD  arrived at a bedroom and proceeded to attempt
to open the bedroom door. Upon information and belief,  DEFENDANT HELMSTEAD could not
have known who the room belonged to.

42.     At that time, MS. WHITE stood in front of the bedroom door, with her phone in
hand, and called 911. At the same time, MS. WHITE, continued to protest DEFENDANT
HELMSTEAD'S unlawful entry and search and told him to "show the warrant now or leave [her]
house."

43.     Upon information and belief, as MS. WHITE was attempting to call 911, the
officer, pulled out a device and blocked her phone call and/or called ahead to the police station to
have them disregard MS. WHITE'S call. As a result, MS. WHITE'S phone call was ignored,
dropped, and/or disregarded by the SOUTHAMPTON TOWN POLICE DEPARTMENT.

44.     MS. WHITE attempted to call 911 a second time. Once again,  DEFENDANT

6

HELMSTEAD pulled out the device and blocked her call and/or called ahead to the police station to have them disregard MS. WHITE'S call. As a result, MS. WHITE'S phone call was ignored, dropped, and/or disregarded by the SOUTHAMPTON TOWN POLICE DEPARTMENT again.

45.     MS. WHITE asked the officer to "stop blocking [her 911] calls."  DEFENDANT HELMSTEAD did not respond.

46.     While MS. WHITE was making her third 911 call, DEFENDANT HELMSTEAD physically pushed MS. WHITE aside.

47.     DEFENDANT HELMSTEAD physically pushed MS.WHITE aside and opened the door to the bedroom as Ms. White stood helpless.

48.     DEFENDANT HELMSTEAD did not enter the bedroom. Upon information and belief, the officer did a visual search of the bedroom while standing in the doorway. Meanwhile, MS. WHITE continued to voice her objections.

49.     As MS. WHITE truthfully indicated to the officer, her son was not present at the home.  DEFENDANT HELMSTEAD  then turned around and began to walk towards the living room area while MS. WHITE followed him.

50.     As  DEFENDANT HELMSTEAD walked towards the livingroom area, MS. WHITE advised  DEFENDANT HELMSTEAD that she was going to use her cell phone to place another 911 call in order to attempt to prevent the officer from blocking her call again.

51.     As MS. WHITE entered her bedroom to locate her cell phone,  DEFENDANT HELMSTEAD turned around and followed Ms. White into her bedroom.

52.     DEFENDANT HELMSTEAD then approached MS. WHITE and got very close to her as she attempted to dial 911 in her bedroom.

53.     DEFENDANT HELMSTEAD then raised and pointed his finger in MS. WHITE'S face and forcefully proclaimed: "If you ever call us [the police] again, we will not come to help you!" Upon information and belief, these were the first words spoken to MS. WHITE, by DEFENDANT HELMSTEAD , after he entered her home.

54.      DEFENDANT HELMSTEAD 'S actions, threats, and aggressive tone of voice caused Ms. White to fear for her safety. Suddenly MS. WHITE, who adamantly and continually protested the officer's entry and search of her home was shocked and speechless. MS. WHITE gave no response.

55.      DEFENDANT HELMSTEAD  then turned and, upon information and belief, exited Ms. White's home.  DEFENDANT HELMSTEAD  regrouped with the OFFICER JOHN DOE.

56.      When MS. WHITE was able to recover from the shock caused to her by DEFENDANT HELMSTEAD and Defendant Officer JOHN DOE'S actions and statement, Ms. White proceeded to try to call the police again.

57.      However, this time, Ms. White was forced to place a call to the New York State Police because  DEFENDANT HELMSTEAD had just told her that the SOUTHAMPTON TOWN POLICE "[would] not come to help [her]." When MS. WHITE advised dispatch at the State Police about what had just occurred, the State police advised MS. WHITE that there was nothing they could do.

58.      As a result of stress caused by this incident, Ms. White, who was 69 years of age at the time, became weak and began to experience sharp chest pains and back.

59.      MS. WHITE then decided to go to the hospital.

60.      MS. WHITE went outside to get to her car, in order to go to the hospital. Upon arriving outside, MS. WHITE notice  DEFENDANT HELMSTEAD , who was standing in front of her home with another officer.

61.      While outside, MS. WHITE asked  DEFENDANT HELMSTEAD for his badge number, to which  DEFENDANT HELMSTEAD replied "kiss my ass!"

62.      Ms. White was later taken to Central Suffolk Hospital, which kept her overnight for observation. Central Suffolk hospital transferred Ms. White (by ambulance) to Winthrop Hospital, located in Nassau County. MS. WHITE was then admitted into Winthrop Hospital's

cardiac unit, where she remained for four days.

63.    Upon information and belief, MS. WHITE was diagnosed with, and suffered, a heart attack and other illnesses as a result of DEFENDANT HELMSTEAD's intentional, reckless, and/or negligent actions.

64.    Upon information and belief, MS. WHITE had no heart problems/conditions prior to DEFENDANT HELMSTEAD's and Defendant Officer JOHN DOE 's actions as alleged in this Complaint.

65.    Subsequently, MS. WHITE was forced to endure several follow-up visits with different physicians, who monitored her heart condition. In addition, MS. WHITE was forced to take prescription medication(s).

66.    A few days later, MS. WHITE sought to file a report against Defendant Officers JOHN DOE'S 1 and 2. However, MS. WHITE was nervous and felt that she could not go to the SOUTHAMPTON TOWN POLICE DEPARTMENT to file a complaint because DEFENDANT HELMSTEAD told her that the Southampton Police "[would] not come to help [her]."

67.    Instead of going to the police station, MS. WHITE was forced to go to the TOWN OF SOUTHAMPTON'S Village Hall for assistance and to make a report.

68.    Eventually, MS. WHITE was directed back to the SOUTHAMPTON TOWN POLICE DEPARTMENT who advised her that they would send an investigating officer to her home so that she could explain her story and make a written statement/complaint against the Defendant Officers.

69.    MS. WHITE was visited by Defendant LIEUTENANT JOHN JAMES, pursuant to her request to lodge a complaint against Defendant Officers HELMSTEAD and JOHN DOE.

70.    At the time that LT. JAMES went to MS. WHITE'S home to take her complaint, MS. WHITE was joined by a witness, who was present at the time that DEFENDANT HELMSTEAD and JOHN DOE invaded MS. WHITE'S home.

71.    LT. JAMES asked MS. WHITE and her witness to make written statements. MS.

WHITE and her witness did make said written statements.

72.     The written statement of MS. WHITE'S witness corroborated MS. WHITE'S account of the events. MS. WHITE also advised LT. JAMES that there were other people/witnesses in her home at the time who could provide additional corroboration and information if necessary. LT. JAMES did not seek information from these witnesses in good faith.

73.     LT. JAMES then took the written statements and advised MS. WHITE that he would "investigate her complaint."

74.     LT. JAMES did not investigate MS. WHITE'S or her witness' complaints/ statements. Instead, LT. JAMES made the sole determination, without full and complete knowledge of the facts and without interviewing all witnesses present, that Ms. White's account of the event was false.

75.     Instead, LT. JAMES totally disregarded MS. WHITE'S and her witness' reports and accounts of the event. In addition, LT. JAMES never sought out or interviewed the witnesses that were present in MS. WHITE'S home on the date of the incident.

76.     LT. JAMES then wrote a letter MS. WHITE, which justified the wrongful actions of  DEFENDANT HELMSTEAD and Defendant Officer JOHN DOE. In this letter, LT. JAMES also sought to place blame on MS. WHITE. In this Letter, LT. JAMES intentionally omitted the names of the officers in further attempt to conceal their identities from Ms. White.

77.      In addition to placing blame on MS. WHITE, LT. JAMES also supported and bolstered numerous false statements made by  DEFENDANT HELMSTEAD and JOHN DOE with regard to the incident. LT. JAMES then concluded by stating, summarily, that his alleged "findings in this matter do not support any police misconduct."

78.     Upon information and belief, LT. JAMES never intended to, nor did he, conduct a good faith investigation into the incident.

79.     Upon information and belief, LT. JAMES went to MS. WHITE'S home to take statements as a matter of course and never intended to do anything further with regard to these

reports/statements. Instead, LT. JAMES sought to, and did, cover-up the wrongful actions of DEFENDANT HELMSTEAD and JOHN DOE. Although LT. JAMES insisted that alleged warrants existed, copies of said warrants were never produced for MS. WHITE (or anyone else) to see or verify. In addition, LT. JAMES intentionally refused to provide the names, badge numbers, and/or identities of DEFENDANT HELMSTEAD and JOHN DOE with intent to conceal their identities from MS. WHITE.

80.     In addition, LT. JAMES justified the wrongful actions of DEFENDANT HELMSTEAD and Defendant DOE stating that the officers "reasonably believed that a black male *wearing a hooded sweatshirt* and entering your residence on that date in time was in fact your son . . ." However, on the date of the incident, the officers never mentioned anything about an alleged "black male wearing a hooded sweatshirt," nor did the officers ask MS. WHITE to verify the identity of said alleged individual.

81.     The officer's alleged site of a "*black male wearing a hooded sweatshirt*," which the officers did not and could not identify as MS. WHITE'S son, did not give the officers cause to justify their unlawful and un-consented entry into MS. WHITE'S home.

82.     By failing to investigate DEFENDANT HELMSTEAD and JOHN DOES actions, while supporting same, LT. JAMES ratified and condoned their unlawful conducts and sought to deprive MS. WHITE of a good faith investigation.

83.     Upon information and belief, Defendants TOWN OF SOUTHAMPTON, SOUTHAMPTON TOWN POLICE DEPARTMENT never followed up on MS. WHITE'S Complaints, nor did they supervise the investigation of the matter. Instead, Defendants TOWN OF SOUTHAMPTON and SOUTHAMPTON TOWN POLICE DEPARTMENT allowed the summary investigation and did nothing further in an attempt to sweep the incident under the rug.

84.     Defendants TOWN OF SOUTHAMPTON and SOUTHAMPTON TOWN POLICE DEPARTMENT supported and ratified the unlawful conduct of its Officers DEFENDANT HELMSTEAD and JOHN DOE and the subsequent cover-up of LT. JAMES.

11

## AS AND FOR A FIRST COUNT
### 42 U.S.C. § 1983 (against all Defendants)

85.      The plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 84 of this Complaint with the same force and effect as though fully set forth herein.

86.      The Defendants, their  agents, employees and servants, had no justifiable cause to enter and search MS. WHITE'S home against MS. WHITE'S expressed will.

87.      Upon information and belief, the alleged warrant that the officers claimed they had for MS. WHITE'S son was for an alleged violation (as opposed to a crime) that was allegedly committed by MS. WHITE'S son weeks/months before the officers attempted to execute the alleged warrant.

88.      The Defendant officers' search for MS. WHITE'S son was not an emergency or an exigent circumstance that would warrant an entry into the home of a third person (MS. WHITE) without a valid search warrant. Although the Defendant officers claimed that they had an arrest warrant, the Defendant officers never attempted to show or display same.

89.      The Defendant officers made no reasonable attempt, whatsoever, to show their alleged warrant(s) to MS. WHITE.

90.      The Defendant officers made no reasonable attempt to prove to MS. WHITE that a valid warrant (of any kind) existed, despite MS. WHITE'S numerous requests.

91.      The Defendants, their  agents, employees and servants, had no justifiable cause to enter and search MS. WHITE'S home against MS. WHITE'S expressed will, without first procuring a valid search warrant.

92.      The Defendant officers had no warrant(s) of any kind.

93.       The wrongful stop, search, seizure, trespass, harassment, assault, battery, abuse of authority, abuse of process,  threats  and other wrongful acts conducted against MS. WHITE by the collective Defendants, their agents, employees and servants, were committed under color of law, customs, and statutes of the State of New York.

94.    Under color of law, the Defendants, their agents, employees and servants deprived the MS. WHITE of her Fourth, Fifth, and Fourteenth Amendment rights to protection from unlawful search and seizure, Equal Protection and Due Process.

95.    The Defendants' wrongful actions in refusing to conduct a proper investigation into MS. WHITE'S complaints and refusing to interview MS. WHITE'S witnesses was an attempt to cover up the wrongful stop, search, seizure, trespass, harassment, assault, battery, abuse of authority, abuse of process, threats and other wrongful acts which was inflicted by the Defendants against MS. WHITE.

96.    The wrongful stop, search, seizure, trespass, harassment, assault, battery, abuse of authority, abuse of process, threats, negligent, grossly negligent, and other wrongful acts constitutes a violation of MS. WHITE'S rights, secured by the Fourth Amendment to the United States Constitution, to be free from unreasonable searches and seizures.  Such actions were negligent, grossly negligent, reckless, unreasonable and unauthorized, as the defendants had a duty not to subject MS. WHITE to wrongful stops, searches, seizures, trespasses, harassment, assault, battery, abuse of authority, abuse of process, threats and other wrongful acts.

97.    The Defendants, their agents, employees and servants acted under color of law to deny MS. WHITE of her constitutional rights to due process and freedom from unreasonable search and seizure, by wrongfully stopping, searching, seizing, trespassing, harassing, assaulting, battering, abusing authority, abusing process, threatening and violating other due process guarantees secured to MS. WHITE by the Fifth and Fourteenth Amendments of the United States Constitution.

98.    Such abuse of process was continued by the defendants, their agents, servants and employees in their refusal to adequately investigate the actions of the Defendant Officers and by intentionally failing to properly review and investigate the actions of defendant officers and officials for their actions against the MS. WHITE.

99.    Such abuse of process was continued by the defendants, their agents, servants and employees in their refusal to adequately investigate the actions of the Defendant Officers and by

intentionally failing to properly review and investigate the actions of defendant officers and officials while attempting to justify and cover-up the Defendant officer's wrongful acts.

100.    As a consequence of Defendants' wrongful actions, negligent/grossly negligent behavior, and violation of State and Federal laws, MS. WHITE was subject to great physical mental and emotional harm; was made to suffer great pain and suffering; was subjected to great fear, terror, personal humiliation and degradation; and continues to suffer pain and mental and emotional distress as a result of the aforesaid unlawful conduct of Defendants, their agents, employees, and servants.

101.    In addition, Plaintiff (who is elderly) has been forced to believe that she is not protected and/or cannot go to the SOUTHAMPTON TOWN POLICE DEPARTMENT in the event that she requires police protection/service/assistance.

102.    That by reason of the foregoing, Plaintiff has been damaged in the sum of Two MILLION DOLLARS ($2,000,000.00).

### AS AND FOR A SECOND COUNT
### 42 U.S.C. § 1983
### Municipal Liability
(Against Defendants TOWN OF SOUTHAMPTON & SOUTHAMPTON TOWN POLICE DEPARTMENT)

103.    The plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 102 of this complaint with the same force and effect as though fully set forth herein.

104.    In actively inflicting and failing to prevent the above stated abuses incurred by plaintiff, the Defendants acted unreasonably, recklessly, grossly negligent, and negligently in failing to exercise the slightest amount of due care to secure and protect the civil and constitutional rights of MS. WHITE against illegal search and seizure, physical abuse, trespass and other due process violations.  Said rights are guaranteed to MS. WHITE by 42 U.S.C. §§ 1983, 1985, and by the Fourth, Fifth, and Fourteenth Amendment of the Constitution.

105.    Both before and after January 16, 2004, the TOWN OF SOUTHAMPTON, and SOUTHAMPTON TOWN POLICE DEPARTMENT, has permitted, tolerated and encouraged a

14

pattern and practice of unjustified, unreasonable and illegal abuses of Black persons (including MS. WHITE) by its police officers.

106.    Although such police conduct was improper, said incidents were covered up by the TOWN OF SOUTHAMPTON and SOUTHAMPTON TOWN POLICE DEPARTMENT, its agents, employees and servants, including Defendant LIEUTENANT JOHN JAMES by official claims that the officers' apparent wrongful actions were justified and proper and by using false statements and other false evidence to sustain their otherwise unsupportable justification(s).

107.    Said charges and official claims have been fully backed by the TOWN OF SOUTHAMPTON and SOUTHAMPTON TOWN POLICE DEPARTMENT, which has repeatedly and  unreasonably sided with the abuse of persons so effected in nearly all cases, despite vast evidence of wrongdoing (and prior negligent/grossly negligent actions) by its officers against minority persons, including Plaintiff herein.

108.    Additionally, the TOWN OF SOUTHAMPTON and SOUTHAMPTON TOWN POLICE DEPARTMENT has systematically failed to identify the improper abuse, misuse, violative acts and brutality by police officers and officials, while further failing to subject such officers and officials to discipline, closer supervision, or restraint.

109.    Upon information and belief, specific systemic flaws in the TOWN OF SOUTHAMPTON's and SOUTHAMPTON TOWN POLICE DEPARTMENT's misconduct review process include but are not limited to the following:

> a.  Preparing reports regarding investigations of unwarranted incidents as routine point-by-point justification of the police officers actions regardless of whether such actions are justified;
>
> b.  Police officers investigating incidents systematically fail to credit testimony by non-police officer witnesses and uncritically rely on reports by police officers involved in the incident;
>
> c.  Police officers investigating incidents fail to include in their reports relevant factual information which would tend to contradict the statements of the police officer involved;
>
> d.  Supervisory police officers exonerate police officers for misconduct and abuse of process before the investigation of the incident by the police department has been

15

completed;

f.  hastily accepting the polices' above- as provided information from police reports regarding abuses and civil rights infringements, despite strong evidence to suggest that the police reports are inaccurate, untruthful, and meant to conceal blatant police misconduct.

110.    Said cover-up by the defendants, TOWN OF SOUTHAMPTON and SOUTHAMPTON TOWN POLICE DEPARTMENT, was executed in this case, where the defendant, its agents, employees and servants failed to sufficiently investigate the allegations and statements of Complainants and their witnesses, but instead acted under color of statute to knowingly, recklessly and/or  negligently impose false facts and statements against Plaintiff..

111.    By permitting and assisting such a pattern of police misconduct, the Defendants, TOWN OF SOUTHAMPTON acted under color of custom and policy to condone, encourage and promote the deprivation of Plaintiff's Fourth, Fifth and Fourteenth Amendment rights; to wit the Defendants SOUTHAMPTON TOWN POLICE DEPARTMENT, DEFENDANT HELMSTEAD, "JOHN DOE and LIEUTENANT JOHN JAMES were encouraged by the TOWN OF SOUTHAMPTON , to believe that their actions against the Plaintiff would be accepted without impunity, just as these actions have been so accepted to date.

112.    As a consequence of the Defendants TOWN OF SOUTHAMPTON's systemic practice, pattern, and custom of intentionally promoting and supporting officers' and official violations of 42 U.S.C. § 1983, Plaintiff was deprived of her freedom, intruded upon,  and physically and emotionally harmed, to the extent of which she suffered from a heart attack, sleeplessness, anxiety, insomnia, stress and related emotional distress, which required and still requires medical attention.

113.    As a proximate cause of the collective TOWN OF SOUTHAMPTON's custom and policy of supporting and effectively promoting the very same police abuses which occurred against Plaintiff, said plaintiff was subjected to great fear, personal humiliation and degradation, with wanton disregard for the serious harm and damage done to the physical and emotional well being

of the Plaintiff.

114.    In addition, Plaintiff (who is elderly) has been forced to believe that she is not protected and/or cannot go to the SOUTHAMPTON TOWN POLICE DEPARTMENT in the event that she requires police protection/service/assistance.

115.    That by reason of the foregoing, Plaintiff has been damaged in the sum of Two Million Dollars ($2,000,000.00).

**AND AS FOR A THIRD COUNT**

**42 U.S.C. § 1983 ALTERNATE LIABILITY OF THE**
**TOWN OF SOUTHAMPTON, SOUTHAMPTON TOWN POLICE DEPARTMENT**

116.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 115 of this Complaint with the same force and effect as though fully set forth herein.

117.    Defendants TOWN OF SOUTHAMPTON and SOUTHAMPTON TOWN POLICE DEPARTMENT lacked any cause to stop, search, seize, trespass, harass, assault, batter, abuse authority, abuse process, and/or threaten MS. WHITE.

118.    Defendants TOWN OF SOUTHAMPTON and SOUTHAMPTON TOWN POLICE DEPARTMENT are thus directly liable for the constitutional violations that Plaintiff DOROTHY WHITE suffered, in that Defendants TOWN OF SOUTHAMPTON and SOUTHAMPTON TOWN POLICE DEPARTMENT , hired and retained officers and detectives who, acting within the course and scope of power and authority conveyed to the officers and detectives by Defendants TOWN OF SOUTHAMPTON and SOUTHAMPTON TOWN POLICE DEPARTMENT , violated the constitutional rights of Plaintiff.

119.    Plaintiff acknowledges that respondeat superior is not now a basis for TOWN OF SOUTHAMPTON's and SOUTHAMPTON TOWN POLICE DEPARTMENT's liability under existing law.  Plaintiff submits that there exists a good faith argument for the modification of that rule based on the dissenting opinion of Justice Breyer in Board of County Commissioners of Bryan County, Oklahoma v. Jill Brown et al., [520 U.S. 397, 117 S.Ct. 1382 (1997)], and based upon the

literature addressing this issue.

120.    As a direct and proximate result of the aforesaid acts, omissions, systemic flaws, policies and customs of the defendants TOWN OF SOUTHAMPTON and SOUTHAMPTON TOWN POLICE DEPARTMENT, and the other defendants unjustifiably mistreated and abused Plaintiff.  All of this was done in violation of the Plaintiff's civil and constitutional rights.

121.    All of these rights are secured to Plaintiff by the provisions of the Fourth Amendment, Sixth Amendment, the due process clause of the Fifth and Fourteenth Amendments to the Constitution of the United States and by 42 U.S.C. §§ 1983, 1985 and 1986 and the laws of the State of New York.

122.    Plaintiff has suffered and will continue to suffer from physical and psychological harm, humiliation, fear, and nervousness with respect to police authority.

123.    That by reason of the foregoing, Plaintiff has been placed in fear for her life/well-being. In addition, Plaintiff (who is elderly) has been forced to believe that she is not protected and/or cannot go to the SOUTHAMPTON TOWN POLICE DEPARTMENT in the event that she requires police protection/service/assistance. Accordingly, Plaintiff  has been damaged in the sum of Two Million dollars ($2,000,000.00).

## AS AND FOR A FOURTH COUNT
### 42 U.S.C. § 1985

(Against Defendants LIEUTENANT JOHN JAMES,   DEFENDANT HELMSTEAD AND JOHN DOE)

124.    The Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 123 of this complaint with the same force and effect as though fully set forth herein.

125.    Defendants LIEUTENANT JOHN JAMES,   DEFENDANT HELMSTEAD AND JOHN DOE, conspired to deprive Plaintiff of her Fourth, Fifth, and Fourteenth Amendment rights, and jointly caused such deprivation of rights by acting in concert to unlawfully stop, search, seize,

18

trespass, harass, assault, batter, abuse authority, abuse process, and threaten Plaintiff (among other things). Said Defendants were acting, not pursuant to established rules, laws and guidelines of the Town of Southampton and/or the Southampton  Town Police Department, but pursuant to their own personal motives and purposes.

126.    Upon information and belief, the Defendants LIEUTENANT JOHN JAMES, DEFENDANT HELMSTEAD AND JOHN DOE, further deprived the Plaintiff of her due process rights; specifically by conspiring to enter and search Plaintiff's home without probable cause, investigation, or rule of law.

127.    Defendants LIEUTENANT JOHN JAMES,  DEFENDANT HELMSTEAD AND JOHN DOE further denied the Plaintiff her Constitutional rights via a conspiracy to cover the misconduct of said officers and officials and prevent Plaintiff making and pursing a formal complaint against the Defendant Officers for their misconduct.

128.    In furtherance of said conspiracy, the Defendant officers submitted false statements against MS. WHITE, while refusing to interview or give credence to any witness present at the scene at the time of the incident.

129.    Said actions by defendants LIEUTENANT JOHN JAMES,  DEFENDANT HELMSTEAD AND JOHN DOE, denied the Plaintiff her Due Process, and denied her the equal protection under the law.  All of these rights are guaranteed to the plaintiff under U.S.C. §§ 's 1983, 1985, 1986 and the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

130.    By assisting in the  unlawful stop, search, seizure, trespass, harassment, assault, battery, abuse of authority, abuse of process, and threats made against Plaintiff, LIEUTENANT JOHN JAMES,  DEFENDANT HELMSTEAD AND JOHN DOE, acted in concert and with the shared purpose of denying Plaintiff her rights from unlawful search/seizure, procedural and substantive due process, and the right to equal protection under the laws.  These rights are guaranteed to the Plaintiff under the First, Fourth, Fifth, and Fourteenth Amendments, as well as under 42 U.S.C. §§ 's 1983, 1985, and 1986.

131.    As a result of said conspiracy by the defendants LIEUTENANT JOHN JAMES, DEFENDANT HELMSTEAD AND JOHN DOE, the plaintiff has been subjected to great physical harm, severe humiliation, anxiety, fear, and emotional/psychological harm.

132.    That by reason of the foregoing, Plaintiff has been damaged in the sum of Two Million Dollars ($2,000,000.00).

## AS AND FOR A FIFTH COUNT
### 42 U.S.C. § 1986
(against All Defendants)

133.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 132 of this complaint with the same force and effect as though fully set forth herein.

134.    The unlawful stop, search, seizure, trespass, harassment, assault, battery, abuse of authority, abuse of process, threats and other wrongful acts conducted against the Plaintiff by the defendants TOWN OF SOUTHAMPTON, SOUTHAMPTON TOWN POLICE DEPARTMENT, LIEUTENANT JOHN JAMES,   DEFENDANT HELMSTEAD AND JOHN DOE, constituted abuse of process, abuse of authority, breach of police procedures, violations of state and federal laws and violations of the plaintiff's Fourth, Fifth, and Fourteenth Amendment rights.

135.    The Defendant Officers negligently, recklessly, and/or intentionally breached their duty under 42 U.S.C. § 1986 to prevent the commission of the civil rights violations perpetrated against plaintiff, including violations of 42 U.S.C. §§ 1983 and 1985, and substantive and procedural due process infractions.

136.    The Defendants TOWN OF SOUTHAMPTON, SOUTHAMPTON TOWN POLICE DEPARTMENT, LIEUTENANT JOHN JAMES,   DEFENDANT HELMSTEAD AND JOHN DOE, knew or should have known that the stop, search, seizure, trespass, harassment, assault, battery, abuse of authority, abuse of process, threats and other wrongful acts committed against Plaintiff violated the plaintiff's rights, guaranteed to her under the Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983, 1985 and 1986.

137.    Each of the said defendants had the authority, ability and concurrent duty under 42 U.S.C. §  1986 to prevent the stop, search, seizure, trespass, harassment, assault, battery, abuse of authority, abuse of process, threats and other wrongful acts against Plaintiff, yet neglected to prevent said violations from occurring, and further failed to intervene to protect or aid the plaintiff when such violations did in fact occur.

138.    The defendants and each of their failures to stop, prevent, investigate, and/or remedy these wrongful, negligent and/or grossly negligent  actions constitutes a breach of their duty to do so under U.S.C. §  1986.

139.    Said defendants (individually and collectively) had the power to prevent the continued due process violations against plaintiff, yet had failed to prevent or protect the plaintiff from unwarranted,  potential, and actual harm(s) she suffered..

140.    The exoneration of and refusal to discipline the defendant officers and detectives for their misconduct against plaintiff is neglectful of their duty to prevent the further violation of plaintiff's right to compensation under 42 U.S.C. §§ 's 1983, 1985 and 1986.

141.    As a result of the failure of the collective defendants to prevent the known violations stated above, the plaintiff has suffered physical harm, extreme fear, personal humiliation and degradation, emotional and psychological harm to the detriment of her health.

142.    By reason of the foregoing, Plaintiff has been damaged in the sum of Two Million Dollars ($2,000,000.00).

**AS AND FOR THE SIXTH CAUSE OF ACTION**
**<u>ASSAULT</u>**

143.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 142 of this Complaint with the same force and effect as though fully set forth herein.

144.    The DEFENDANT HELMSTEAD, while in Plaintiff's home, followed Ms. White into her bedroom, which was outside of the view of everyone else inside the home at that time.

145.    Defendant Officer DEFENDANT HELMSTEAD then approached MS. WHITE in

21

a quick and violent manner and got close to her as she attempted to dial 911 in her bedroom.

146.    DEFENDANT HELMSTEAD then intentionally raised and pointed his finger in MS. WHITE'S face in a threatening manner and forcefully proclaimed: "If you ever call us [the police] again, we will not come to help you!"

147.    DEFENDANT HELMSTEAD's actions, threats, and aggressive tone of voice caused Ms. White to fear for her safety and placed MS. WHITE in apprehension of imminent harmful and offensive contact, as she reasonably believed that the Defendant Officer could have and was going to strike her.

148.    DEFENDANT HELMSTEAD, through his above described actions, intended to cause MS. WHITE to become fearful that the Defendant Officer was about to cause harmful and offensive contact to MS. WHITE.

149.    DEFENDANT HELMSTEAD had the real and apparent ability to bring about harmful and offensive contact to MS. WHITE and intended to make sure that MS. WHITE was aware of said ability when he violently approached MS. WHITE (outside of the presence and view of MS. WHITE's guests/witnesses) and placed his finger in the face of MS. WHITE while yelling threatening words.

150.    DEFENDANT HELMSTEAD's menacing and threatening acts and/or gestures did in fact cause MS. WHITE to believe that a harmful and offensive bodily contact was about to occur.

151.    As a result of  DEFENDANT HELMSTEAD's  menacing and threatening acts and/or gestures, MS. WHITE was cause to suffer physical and emotional/psychological injuries including, but not limited to a heart attack and fear/intimidation, which continues to date.

152.     By reason of the foregoing, Plaintiff has been damaged in the sum of One Million Dollars ($1,000,000.00).

## AS AND FOR THE SEVENTH CAUSE OF ACTION
## <u>BATTERY</u>

153.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 152 of this Complaint with the same force and effect as though fully set forth herein.

154.    While DEFENDANT HELMSTEAD forayed through MS. WHITE'S home, against her will and without her consent, DEFENDANT HELMSTEAD approached a bedroom door located in said home.

155.    Despite MS. WHITE's clear expression of dissent and lack of consent, DEFENDANT HELMSTEAD reached for the doorknob in an effort to open the bedroom's door.

156.    While attempting to open the bedroom door, DEFENDANT HELMSTEAD intentionally and violently pushed MS. WHITE away from the door subjecting MS. WHITE to a violent/offensive bodily contact.

157.    Defendant Officer JOHN DOE 1 lacked caused and/or authority to be present in MS. WHITE'S home.

158.    MS. WHITE did not consent to DEFENDANT HELMSTEAD push and/or violent touch as she stood in front of the bedroom door.

159.    DEFENDANT HELMSTEAD subjected MS. WHITE to violent and offensive bodily contact knowing, and with the intent, that such contact would offend MS. WHITE and could and/or would in fact cause harm/injury to MS. WHITE, who is an elderly woman.

160.    As a result of  DEFENDANT HELMSTEAD aforementioned actions, MS. WHITE was cause to suffer physical and emotional/psychological injuries including, but not limited to a heart attack and fear/intimidation, which continues to date.

161.     By reason of the foregoing, Plaintiff has been damaged in the sum of One Million Dollars ($1,000,000.00).

23

## AS AND FOR THE EIGHT CAUSE OF ACTION
## <u>NEGLIGENCE</u>

162.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 161 of this Complaint with the same force and effect as though fully set forth herein.

163.    Defendants, collectively and individually, had an affirmative duty to follow and adhere to known and established procedure(s) regarding entries and searches, including but not limited to refraining from unlawful stops, searches, seizures, trespass, harassment, assaults, battery, abuses of authority, abuses of process, threats and other wrongful acts that were committed against Plaintiff.

164.    DEFENDANT HELMSTEAD and  JOHN DOE, had an affirmative duty to follow and adhere to known and established procedure(s) regarding entries and searches, including but not limited to refraining from unlawful stops, searches, seizures, trespass, harassment, assaults, battery, abuses of authority, abuses of process, threats and other wrongful acts that were committed against Plaintiff.

165.    Defendant LT. JAMES, who was "allegedly" charged with the duty to investigate the acts of DEFENDANT HELMSTEAD and  JOHN DOE, had an affirmative duty to conduct a fair, thorough, objective and unbiased investigation. Defendant LT. JAMES had a duty to investigate and report truthfully in an effort to protect the public from police misconduct. Defendant JAMES had a duty to discipline and/or recommend that the officers were disciplined in the event that a complete investigation revealed misconduct.

166.    DEFENDANT  HELMSTEAD  and  Officer  JOHN  DOE  breached  their aforementioned duties by performing a warrant less and unverified intrusive search in Plaintiff's residence despite Plaintiff's expressed protest.

167.    Defendants, were negligent and/or grossly negligent and further breached their duties in failing to use the slightest amount of due care in performing said warrant less, unlawful, and

24

intrusive search.

168.    Defendants warrantless and intrusive search of Plaintiff's premises was unreasonable as a matter of fact and prevailing constitutional law.

169.    Defendants, were negligent and/or grossly negligent and further breached their duties by subjecting Plaintiff to harmful and offensive physical contact and threats while performing their unlawful and intrusive search of Plaintiff's home.

170.    Defendants were negligent and/or grossly negligent and further breached their duties by failing to conduct a reasonable and fair investigation into MS. WHITE'S complaints and the incident. Defendants breached their duties by submitting falsified statements and false accusations against MS. WHITE during their so-called investigation.

171.    Defendants breached their duties by failing to interview witnesses, then existing, which could have supported MS. WHITE's account of the event (or, perhaps the Defendant Officers' account) and provide the reviewers of the Defendant Officer's conduct with a full and adequate account.

172.    As a direct and proximate result of the Defendants' breach of their respective duties, Plaintiff was caused to suffer severe physical, psychological/emotional and monetary damage/injuries including but not limited to a heart attack, fear, anxiety, stress, humiliation, intimidation, depression, medical fees/cost, and legal fees/costs. The aforementioned injuries were foreseeable by Defendants and would not have been bourne by Plaintiff, but for the negligent actions of the Defendants, collectively and individually.

173.    By reason of the foregoing, Plaintiff has been damaged in the sum of One Million Dollars ($1,000,000.00).

### AS AND FOR THE NINTH CAUSE OF ACTION
### NEGLIGENCE (VICARIOUS LIABILITY)

174.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 173 of this Complaint with the same force and effect as though fully set

forth herein.

175.   At all times relevant to this complaint, LIEUTENANT JOHN JAMES, DEFENDANT HELMSTEAD AND JOHN DOE were acting within the scope of their respective authorities and/or acting in furtherance of their duties as employees of Defendants TOWN OF SOUTHAMPTON and SOUTHAMPTON TOWN POLICE DEPARTMENT.

176.   Defendants, collectively and individually, had an affirmative duty to follow and adhere to known and established procedure(s) regarding entries and searches, including but not limited to refraining from unlawful stops, searches, seizures, trespass, harassment, assaults, battery, abuses of authority, abuses of process, threats and other wrongful acts that were committed against Plaintiff.

177.   Defendants, LIEUTENANT JOHN JAMES, DEFENDANT HELMSTEAD AND JOHN DOE, had an affirmative duty to follow and adhere to known and established procedure(s) regarding entries and searches, including but not limited to refraining from unlawful stops, searches, seizures, trespass, harassment, assaults, battery, abuses of authority, abuses of process, threats and other wrongful acts that were committed against Plaintiff.

178.   Defendants had an affirmative duty to fully investigate the complaints of MS. WHITE, provide truthful information and reports pursuant to said investigation, and discipline/reprimand its officers in the event of police misconduct. Defendants had a duty to supervise its employees, agents and officers in the performance of their respective duties.

179.   Defendants, LIEUTENANT JOHN JAMES, DEFENDANT HELMSTEAD AND JOHN DOE breached their aforementioned duties by performing a warrant less and unverified intrusive search in Plaintiff's residence despite Plaintiff's expressed protest.

180.   Defendants, were negligent and/or grossly negligent and further breached their duties in failing to use the slightest amount of due care in performing said warrant less, unlawful, and intrusive search.

181.   Defendants' warrantless and intrusive search of Plaintiff's premises was

26

unreasonable as a matter of fact and prevailing constitutional law.

182.    Defendants, were negligent and/or grossly negligent and further breached their duties by subjecting Plaintiff to harmful and offensive physical contact and threats while performing their unlawful and intrusive search of Plaintiff's home.

183.    Defendants breached their duties in failing to use reasonable care with respect to conducting an adequate, truthful and unbiased investigation in to the complaint made by Plaintiff.

184.    All of the Defendant Officer's negligent, grossly negligent, reckless, unlawful, unreasonable, and intentional actions were performed while Defendants were engaged in their assigned duties. As such said actions were necessary and/or incidental to their employment(s).

185.    As a direct and proximate result of the Defendants' negligent/grossly negligent breach of their respective duties, Plaintiff was caused to suffer severe physical, psychological/emotional and monetary damage/injuries including but not limited to a heart attack, fear, anxiety, stress, humiliation, intimidation, depression, medical fees/cost, and legal fees/costs. The aforementioned injuries of Plaintiff were foreseeable by Defendants and would not have been bourne by Plaintiff, but for the negligent actions of the Defendants, collectively and individually.

186.    By reason of the foregoing, Plaintiff has been damaged in the sum of One Million Dollars ($1,000,000.00).

**AS AND FOR THE TENTH CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
(Against Defendants LIEUTENANT JOHN JAMES,   DEFENDANT HELMSTEAD AND JOHN DOE)

187.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 187 of this Complaint with the same force and effect as though fully set forth herein.

188.    Defendants, by their collective actions as described above in paragraphs 1 - 187, demonstrated and exhibited a callous and indifferent disregard for the health, safety, and well being of Plaintiff.

27

189. In light of the surrounding circumstances, including Plaintiff's age, Defendant's intentional, malicious, and/or grossly negligent actions (particularly the actions of DEFENDANT HELMSTEAD ) were extreme, outrageous, and/or calculated to cause harm to Plaintiff.

190. As a direct and proximate result of the Defendants' actions, Plaintiff was caused to suffer severe physical, psychological/emotional and monetary damage/injuries including but not limited to a heart attack, fear, anxiety, stress, humiliation, intimidation, depression, medical fees/cost, and legal fees/costs, all of which were foreseeable by Defendants.

191. By reason of the foregoing, Plaintiff has been damaged in the sum of One Million Dollars ($1,000,000.00).

## PUNITIVE DAMAGES

192. That Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 191 of this Complaint with the same force and effect as though fully set forth herein.

193. The acts of the individual LIEUTENANT JOHN JAMES, DEFENDANT HELMSTEAD AND JOHN DOE were willful, wanton, malicious and oppressive, grossly negligent, and were motivated solely by a desire to harm Plaintiff, without regard for Plaintiff's well being, and were based on a lack of concern and ill-will towards Plaintiff. Such acts therefore deserve an award of Four Million Dollars ($4,000,000.00) as punitive damages.

**WHEREFORE,** plaintiff demands judgment against defendants:

a. On the First Cause of Action in the sum of Two Million dollars ($2,000,000.00);

b. On the Second Cause of Action in the sum of Two Million dollars ($2,000,000.00);

c. On the Third Cause of Action in the sum of Two Million dollars ($2,000,000.00);

d. On the Fourth Cause of Action in the sum of Two Million dollars ($2,000,000.00);

e. On the Fifth Cause of Action in the sum of Two Million dollars ($2,000,000.00);

f. On the Sixth Cause of Action in the sum of One Million dollars ($1,000,000.00);

g. On the Seventh Cause of Action in the sum of One Million dollars ($1,000,000.00);

28

h.        On the Eighth Cause of Action in the sum of One Million dollars ($1,000,000.00);

i.        On the Ninth Cause of Action in the sum of One Million dollars ($1,000,000.00);

j.        On the Tenth Cause of Action in the sum of One Million dollars ($1,000,000.00);

k.        Punitive damages in the amount of Four Million Dollars ($4,000,000.00);

l.        Declaratory Judgment that defendants wilfully violated plaintiffs' rights secured by federal and state law as alleged herein;

m.        Injunctive relief, requiring defendants to correct all past violations of federal and state law as alleged herein; to enjoin defendants from continuing to violate federal and state law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws;

n.        An order granting such other legal and equitable relief as the court deems just and proper.

o.        Award costs of this action including attorney's fees to the plaintiff.

<u>**A JURY TRIAL IS HEREBY DEMANDED.**</u>

Dated:       March 22, 2007
              Hempstead, New York

Respectfully Submitted,

_____
FREDERICK K. BREWINGTON (FB5295)
GREGORY CALLISTE, JR (GC 8140)
THE LAW OFFICES OF
FREDERICK K. BREWINGTON
*Attorneys for Plaintiff*
50 Clinton Street, Suite 501
Hempstead, New York 11550
(516) 489-6959